# Exhibit "A"

JOHN PETER LEE, LTD.
JOHN PETER LEE, ESQ.
Nevada Bar No. 001768
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| REGATTA BAY LIMITED, | CASE NO. |
| Plaintiff, | |
| vs. | |
| UNITED STATES OF AMERICA | |
| Defendant. | |

604.022029 dp

## COMPLAINT

COMES NOW Regatta Bay Limited ("Regatta Bay" or "Regatta"), by and through its counsel, John Peter Lee, Ltd. and complains as follows:

### STATEMENT OF JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C § 1331 concerning the claims arising herein under the laws of the United States which raise a federal question.

2. The claims asserted herein arise under the Federal Tort Claims Act ("FTCA") codified at 28 U.S.C. § 2671 et. sec. and particularly at § 2674.

3. This Court also has subject matter jurisdiction under 28 U.S.C. § 1346 as to the claims herein stated for loss of property caused by negligent or wrongful acts or omissions with an employee of the Government or acting within the scope of his or her office or employment under the circumstances described below or the United States, if a private person, would be liable to Regatta Bay in accordance with the law of the place, here Nevada, where the act or omission occurred.

4. This Court also has jurisdiction over the pendant claims stated herein under the pendant claim or ancillary claim jurisdiction of the Court.

5. Regatta Bay Limited is a Nevada Limited Partnership, with its principal place of business being in Nevada over which the Court has personal jurisdiction.

6. The Court has personal jurisdiction over the United States of America Department of Housing and Urban Development ("HUD"), which operates and conducts regular business in the State of Nevada and which entered into the subject Regulatory Agreement for Insured Multi-Family Housing Projects as of September 1, 1979 ("Regulatory Agreement") in the State of Nevada, a reduced copy of which Regulatory Agreement is attached hereto as Exhibit "1".

7. On August 26, 2002 Regatta presented a written notice in conformity with 28 U.S.C. § 2675 to the Assistant Secretary for Administration of HUD, setting forth Regatta's claim for damages as of that date in the amount of $1,994,536.11. Six months later, February 26, 2002, Regatta had still not received a denial letter from HUD, and the failure by HUD to deny Regatta's claim within six months of its presentation is hereby treated as an administrative denial of the claim under 28 U.S.C. § 2401(b). HUD has not provided notice of final denial of the administrative claim through the date of filing of this Complaint.

8. Venue in this Court is proper under 28 U.S.C. § 1402(b). Regatta Bay demands a trial by jury.

## GENERAL ALLEGATIONS

9. Regatta Bay owned the Regatta Bay Apartments, a 120-unit complex located at 2101 Sandy Lane, Las Vegas, Nevada 89115 from on or about November 2, 1983 through on or about December 4, 2001.

10. Regatta Bay acquired the subject apartments subject to a Deed of Trust securing a Deed of Trust Note for the original principal sum of $3,685,100.00, and Regatta Bay assumed a Regulatory Agreement for Insured Multi-Family Housing Projects ("Regulatory Agreement", attached as Exhibit "1") signed by Paul R. Kaup, an authorized agent for the United States Department of Housing and Urban Development ("HUD"), on or about September 25, 1979. At the outset of its involvement, Regatta Bay provided a copy of its limited partnership agreement to HUD

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

as required, a copy of an excerpt of which is attached as Exhibit "2", which informed HUD at Section 10 of the authority by the General Partner, Phil R. Rosequist, to make working capital loans to Regatta Bay.

11. The Deed of Trust Note required monthly payments on the first day of each month and established late fees for payments made later.

12. During Regatta Bay's ownership of the apartments since November 1983 in the sixteen years of Regatta's course of performance under the Deed of Trust Note and the Regulatory Agreement, whenever Regatta was late with any payment Regatta paid a contractually pre-determined late fee which the loan servicing agent, Reilly Mortgage Group, Inc. ("Reilly") and HUD accepted as not being a material breach. Regatta provided monthly reports to HUD as required, and HUD never objected to the lateness of any of Regatta's payments despite being made after the deadline of the first of the month on numerous occasions throughout the time of Regatta Bay's ownership.

13. Attached as Exhibit "3" is a copy of a June 29, 1994 letter from the local HUD office at 1500 East Tropicana, Las Vegas, Nevada representing that office to have authority to act for HUD by stating:

> On April 15, Secretary, Henry G. Cisneros implemented the field reorganization for the U.S. Department of Housing and Urban Development (HUD). From this day forward, HUD will be doing business in a new way!
>
> Specifically, this office has full authority to make decisions and work with you as a partner to build better, stronger communities. This office has now been designated the primary point of contact for coordination of all HUD programs for your community.

14. On or about March 24, 2000, Janet Browder, Director, Multifamily Hub in San Francisco, and Scott Hunley, Director, DEC, Los Angeles, Satellite Office for HUD, sent a letter to Regatta Bay requiring Regatta Bay to address issues HUD raised therein about the apartments within thirty (30) days, a copy of which letter is attached as Exhibit "4". HUD therein demanded payment forthwith from Regatta of $1,327,420 plus a reversal of accrued interest of $152,665, totaling some $1.48 million, or else face "corrective action".

15. With respect to HUD's demand in the March 24, 2000 letter at Exhibit "4", Rosequist

- 3 -

reviewed the matter with Dave Ewing, the then HUD authorized agent in the local Las Vegas office who was Regatta's contact person. Mr. Ewing recommended that Rosequist not put any more of his money into the Regatta Bay project because HUD intended to enforce the $1.48 million dollar demand to the extent of foreclosing on the Regatta Bay property regardless of the lack of merit to the demand.

16. Regatta paid its June, 2000 payment to the loan servicing agent, Reilly.

17. HUD wrongfully declared on July 19 that a missed payment of Regatta Bay by July 1, 2000 was a "continuing material breach".

18. Reilly's July 26, 2000 letter to Regatta states:

> We have been advised by the US Department of Housing and Urban Development that Regatta Apartments has violated its contractual obligations under the Deed of Trust Note and Deed of Trust. Specifically, the mortgagor has failed to correct the continuing material breach.

The only alleged continuing material breach of which HUD ever gave Regatta notice was the wrongful demand contained the March 24, 2000 letter.

19. On information and belief, HUD conducted an Inspector General's audit, No. 94-SF-212-1002 issued on or about December 20, 1993, which HUD closed with full knowledge of the advances at issue in the March 24, 2000 letter. HUD closed its audit because HUD knew that the advances by the General Partner were consistent with HUD's policies of allowing such advances to preserve the property value and did not constitute material breaches of any of Regatta Bay's agreements with HUD or with the lender or the servicing agent. (Exhibit "2", Excerpt, Section 10 on Working Capital Loans from the General Partner.)

20. Regatta Bay's accounting was literally an open book to HUD. Regatta Bay provided annual certified audits and monthly cash flow reports. Rosequist never made personal withdrawals or received repayment of advances for personal use other than to repay loans he had made to Regatta Bay on at least as favorable terms as were otherwise commercially available, at prime rate. Rosequist's advances were always at his personal risk from funds he had borrowed on other lines of credit at less favorable terms as the terms to which he loaned to Regatta. Regatta's repayment and Regatta's disbursement of Regatta's repayment for Rosequist's advances as shown by HUD's own

1 records were pursuant to such working capital loans as contemplated by the Limited Partnership
2 Agreement and which were necessary for the payment of reasonable and necessary operating
3 expenses of the Regatta Bay Apartments, and were pursuant to HUD's knowledge, acceptance and/or
4 acquiescence of these facts.

5     21.    In HUD's March 24, 2000 letter stating its wrongful demand for $1.48 million dollars
6 payment by Regatta Bay forthwith, HUD never identified the allegedly breaching repayments of
7 advances with any specificity. In fact, to date, HUD has never identified such alleged "continuing
8 material breaches" by Regatta with specificity.

9     22.    On or about August 29, 2000, Frank M. Malone, Director of Multi-Family Asset
10 Management for HUD, sent a letter notifying Regatta Bay that HUD concluded Regatta Bay to be
11 in violation of the Regulatory Agreement, a copy of which letter is attached as Exhibit "5".

12     23.    The only two bases for declaring default stated by Mr. Malone were the incorrect
13 conclusions that: 1) payments of $1,327,424.00 and charges for interest of $152,665.00 for
14 Rosequist's advances were improper and 2) Regatta's failure to pay such amounts to HUD at that
15 time allegedly constituted violations of the Regulatory Agreement. The most specificity HUD ever
16 provided Regatta to identify what HUD alleged to constitute the continuing breaches was an after-
17 the-fact, unsigned, unsubstantiated letter dated May 3, 2001, presumably from Luc-Andre
18 Odabashian, attached as Exhibit "6". Page 2 of Exhibit "6" shows that HUD provided alleged annual
19 totals of repayments of advances, but no specific transactions were identified. The charts on page
20 2 further show that HUD had full knowledge that the most recent of the alleged "continuing material
21 breaches" were more than seven years old and that the most recent alleged breaches followed a
22 history of HUD's acceptance for twelve years previously the exact same practice which Regatta fully
23 disclosed in detail each and every month to HUD in the operating reports.

24     24.    Although Mr. Odabashian did not state a theory on which he based his assertion that
25 Regatta owed $1.48 million dollars, HUD knew to the extent HUD relied upon 12 U.S.C. § 1715z-
26 4a that at least $1,051,500.00 of HUD's principal claim of $1,327,420.00 and most of HUD's interest
27 claim was barred by the statute of limitations. HUD also knew, or should have known, that HUD
28 had waived any objection to this ten-year course of performance ten years ago and that HUD waived

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

- 5 -

1 any objections to this thirteen year course of performance seven years ago. HUD also knew or
2 should have known that the non-payment of HUD's demand was not a violation of the Regulatory
3 Agreement. HUD showed no flexibility in pursuit of the demand in its March 24, 2000 letter despite
4 the incorrectness of HUD's assumed fact and baseless demand.

5     25. Mr. Odabashian's statements at Exhibit "6" contain the admissions described above,
6 but many of his statements are also incorrect. For example, HUD did not disallow "withdrawals"
7 of funds over $10,000.00 from 1985 through 1994. Nonetheless, his description acknowledges that
8 HUD had no objection to the arrangement of repayments of the loans at the time but only attempted
9 in 2001 to object for the first time to the amounts of these repayments made from 1985 through
10 1994. His letter also shows that in 2000 HUD for the first time attempted to label as "violations",
11 "material breaches" or "continuing material breaches" any of the repayments to Rosequist of his
12 advances under his working capital loan made at prime rate to Regatta Bay. HUD encouraged the
13 maintenance of the revolving working capital loan arrangement during the course of Regatta Bay's
14 performance with its lender and with HUD for maintaining the mortgage payments as current, for
15 making needed repairs and for other needs, all as reported in certified annual audits and monthly
16 operating reports on HUD's forms. Further, HUD waived any objection to the arrangement by
17 acquiescence and accepted this course of performance which did not put HUD at risk because the
18 process facilitated the cash flow needs of the property, including the maintenance of payments as
19 current of the HUD insured mortgage, which was consistent with HUD's policy.

20     26. HUD has never provided a meaningful, accurate analysis of how it could recover any
21 money from Regatta Bay such as would put Regatta Bay on notice of specifically what was the
22 alleged "continuing material breach". Instead, HUD used its incorrect interpretation of the above-
23 quoted statute to intimidate Regatta Bay, to intentionally harm Regatta Bay and and to wrongfully
24 foreclose on the Regatta Bay Apartments.

25     27. Despite having received all required audited annual financial statements and monthly
26 operating reports for the project, HUD incorrectly and/or wrongfully concluded in the August 29,
27 2000 letter that the payments at issue were not for allowed purposes under the Regulatory Agreement
28 and all of its terms, including the purpose of paying reasonable operating expenses and the course

- 6 -

of performance between HUD and Regatta Bay since 1983.

28. HUD incorrectly and/or wrongfully concluded in the August 29, 2000 letter that the payments at issue were made in violation of the Regulatory Agreement.

29. Based upon the letters at Exhibits "4" and "5", HUD incorrectly and/or wrongfully thereby declared Regatta Bay to be in default of the Regulatory Agreement, and as a result HUD then bought the insured note back from Reilly and proceeded to wrongfully foreclose upon the property.

30. Mr. Ewing's assessment proved to be correct that HUD was intent on foreclosing on the Regatta Bay property regardless of the fact that HUD was not following its own policies and that foreclosure was neither legally nor economically justified. On October 31, 2001, HUD served its Notice of Default and Foreclosure Sale, admitting that the basis of its notice of intent to accelerate in its July 19, 2000 letter was incorrect because Regatta did make the its June 2000 payment. The notice of default did not show any valid grounds for acceleration of the Note such as HUD purported to accomplish by its July 19 letter to Reilly. HUD's insistence upon acceleration in July 2000 for lateness of the July payment was not justified, and it also made futile any further monthly payments by Regatta Bay. HUD's Notice of Default dated August 29, 2000 at Exhibit "5" shows that the only basis for HUD's default notice was the wrongful demand that Regatta pay $1.48 million dollars forthwith.

31. As a result of HUD's wrongful declaration of default and requirement that Regatta Bay pay in excess of $1.48 million to the project, Regatta Bay lost the property, including its right to enjoy the ongoing appreciation of the property from its past and future, planned capital improvement expenditures and long term maintenance, including the installation of a greatly improved traffic configuration known from experience in the vicinity of Regatta by other HUD projects to provide enhanced security and value to the subject apartments.

32. The loss of these rights of Regatta Bay by HUD's wrongful foreclosure caused Regatta Bay also to lose the value associated with such security, occupancy and the concomitant increase in rental income and value.

33. As Rosequist explained to HUD on numerous occasions, such increased occupancy and rent was highly probable, if not certain, had HUD not wrongfully caused acceleration of the

- 7 -

Deed of Trust Note, declared the Regulatory Agreement to be in default and foreclosed on the property.

34. HUD conducted an auction of the Regatta Bay Apartments on December 4, 2001 and later in 2002 transferred the property to the highest bidder for more than the debt against the property. The buyer has acknowledged that the property was worth more that the forced sale price. It has continued to appreciate, as expected in the Las Vegas real estate market.

35. Regatta Bay's damages are in excess of $2,000,000 and will be calculated by deducting from the value of the property as of the date of trial the surplus funds received from foreclosure after the loan was paid off from the sale proceeds, less the benefit of full payment of the principal secured by the deed of trust, plus attorney's fees incurred and any other damages allowable by law.

### FIRST CAUSE OF ACTION

### (Wrongful Foreclosure)

36. Regatta hereby incorporates paragraph numbers 1 through 35 as if fully set forth herein.

37. In violation of 12 U.S.C. 3705 and the Regulatory Agreement, HUD exercised the power of sale in its Deed of Trust dated September 1, 1979 based upon HUD's incorrect allegation that Regatta Bay was in default of the Regulatory Agreement, although Regatta Bay was not in any material default.

38. At the time the power of sale was exercised and the foreclosure occurred based upon the alleged default of the Regulatory Agreement, no material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement which would have authorized the foreclosure or exercise of the power of sale.

39. HUD's wrongful foreclosure of the Regatta Bay Apartments has caused Regatta Bay to suffer injury in an amount to be computed at the date of trial, including any additional damages which may be discovered and/or proved, plus attorney's fees and costs, and plus costs charged by HUD, which were wrongfully charged to Regatta Bay out of the foreclosure sale proceeds.

40. Regatta Bay seeks recovery of its damages in an amount to be computed at the date

- 8 -

of trial, including any additional items of damages which may be discovered and/or proven.

## SECOND CAUSE OF ACTION

**(Tortious Breach of Contract - Breach of the Covenant of Good Faith and Fair Dealing)**

41. Regatta hereby incorporates paragraph numbers 1 through 40 as if fully set forth herein.

42. Inherent in every contract is a covenant of good faith and fair dealing which compels HUD to have fairly dealt with Regatta Bay under the terms put forth by the Regulatory Agreement.

43. Despite having received all required audited annual financial statements for the project, HUD incorrectly and/or wrongfully concluded that the payments at issue were not for allowed purposes under the Regulatory Agreement and all of its terms, including the purpose of paying reasonable operating expenses in accordance with the course of performance between HUD and Regatta Bay since 1983.

44. HUD knew or should have known that at the time the power of sale was exercised and the foreclosure occurred, based upon the alleged default of the Regulatory Agreement, no material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement which would have authorized the foreclosure or exercise of the power of sale, in breach of the covenant of good faith and fair dealing.

45. HUD's breach of the covenant of good faith and fair dealing has injured Regatta Bay in an amount to be computed at the date of trial.

## THIRD CAUSE OF ACTION

**(Tortious Breach of Contract - Breach of Fiduciary Duty)**

46. Regatta hereby incorporates paragraph numbers 1 through 45 as if fully set forth herein.

47. Upon Regatta Bay's acquisition of the apartments subject to a deed of trust for the original principal sum of $3,685,100.00, and Regatta Bay assuming the Regulatory Agreement, and HUD assuming the role of insurer of the Deed of Trust, the United States assumed a fiduciary duty to Regatta Bay.

48. Despite having received all required audited annual financial statements for the

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

1  project, HUD incorrectly and/or wrongfully concluded that the payments at issue were not for
2  allowed purposes under the Regulatory Agreement and all of its terms, including the purpose of
3  paying reasonable operating expenses in accordance with the course of performance between HUD
4  and Regatta Bay since 1983.

5       49.   HUD knew or should have known that at the time the power of sale was exercised
6  and the foreclosure occurred, based upon the alleged default of the Regulatory Agreement, no
7  material breach of condition or failure of performance existed on Regatta Bay's part of the
8  Regulatory Agreement which would have authorized the foreclosure or exercise of the power of sale,
9  in breach of HUD's fiduciary duty to Regatta Bay as insurer of the Deed of Trust.

10      50.   HUD's breach of fiduciary duty has injured Regatta Bay in an amount to be computed
11 at the date of trial.

### FOURTH CAUSE OF ACTION

**(Tortious Breach of Contract - Tortious Interference with
Contractual Relationship and/or Prospective Business Advantage)**

15      51.   Regatta hereby incorporates paragraph numbers 1 through 50 as if fully set forth
16 herein.

17      52.   In violation of 12 U.S.C. 3705 and the Regulatory Agreement, HUD exercised the
18 power of sale in its Deed of Trust dated September 1, 1979 based upon HUD's incorrect allegation
19 that Regatta Bay was in default of the Regulatory Agreement, although Regatta Bay was not in
20 material default.

21      53.   HUD knew or should have known of Regatta's prospective business advantage
22 existing under Regatta's favorable business position, including leases to its tenants and the right to
23 enjoy the ongoing appreciation of the property from its past and future planned capital and
24 improvement expenditures and long term maintenance, including the installation of a greatly
25 improved traffic configuration known from experience of other HUD projects in the area to provide
26 enhanced security and value to the subject apartments. Regatta Bay had explained such value to
27 HUD in particular detail, and HUD knew its actions were likely to cause Regatta Bay to lose such
28 value.

- 10 -

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

54. At the time the power of sale was exercised and the foreclosure occurred based upon the alleged default of the Regulatory Agreement, no material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement which would have authorized the foreclosure or exercise of the power of sale. HUD thereby tortiously interfered with the contractual relationships and prospective business advantage between Regatta Bay and the lender and loan servicer and with the contractual relationships and prospective economic advantage between Regatta Bay and its tenants.

55. HUD's tortious interference with the contractual relationship and/or prospective business advantage of Regatta Bay has caused Regatta Bay to suffer injury in an amount to be computed at trial.

### ATTORNEY'S FEES

HUD's actions described herein have required Regatta Bay to retain its counsel John Peter Lee, Ltd., and Regatta Bay is entitled to the recovery of its reasonable expenses incurred as a result of HUD's action described herein, including attorneys' fees and costs.

WHEREFORE, Regatta Bay prays for the entry of judgment against HUD as follows:

1. For damages presently computed in excess of $2,000,000, which amount will be computed according to proof at trial;

2. Awarding Regatta Bay its attorney's fees and costs;

3. Awarding Regatta Bay its interest; and

4. For such other relief as is just and equitable.

DATED this 4th day of December, 2007.

JOHN PETER LEE, LTD.

JOHN PETER LEE, ESQ.
Nevada Bar No. 1768
PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Boulevard South
Las Vegas, NV 89101
(702) 382-4044
Attorneys for Plaintiff

- 11 -